ECKHARDT *et al. v.* PHILLIPS *et al.*

(*Nashville,* December Term, 1939.)

Opinion filed March 2, 1940.

SEAY, STOCKELL & EDWARDS, JAMES A. NEWMAN, and RUFUS W. PARDUE, all of Nashville, for complainants.

SETH M. WALKER, LAURENCE B. HOWARD, and R. C. BOYCE, all of Nashville, and L. H. WALKER, of Lebanon, for defendants.

MR. SPECIAL JUSTICE EDWARD J. SMITH delivered the opinion of the Court.

For the second time the court is asked to construe the will of R. S. Phillips, Sr. The question presented for decision on this, as on the former appeal, is whether the estate devised to Swep Sidnor Phillips, the surviving son of the testator, was a base fee or a fee simple absolute.

With underscorings of the testator, the will is as follows:

"I, R. S. Phillips, Sr. of Donelson, Davidson County, Tennessee, being of sound mind and fully capable of attending to my own business, make this my last will, hereby revoking & making void a will made by me 1896, & now in possession of my wife Lillie D. Phillips.

"1st. I, give devise and bequeath to my wife all the personal property I may own at the time of my death, (having, the right, of course, to give away any of it during life), after my funeral expenses and other claims are paid with the following exceptions:—I have 6 silver spoons & a silver ladle with the name of my first wife, Maggie, engraved on each. I give these to her brother W. G. Turner, of Sedalia, Texas; and I want them sent to him immediately after my death by my executor.

"2nd. I want Dower and Homestead set apart legally & properly for my wife, Lillie D. Phillips. I want her provided for well—getting all the law allows her.

"3rd. I hereby give all the land I may own at my death to my little son, Swep Sidnor Phillips, now about 5 months old he having been born since I made my first will in 1896—which will this one revokes.

"Should my son Swep Sidnor Phillips die without and heir or heirs born to him in lawful wedlock, then I want all my land or real estate to go to Bennett Phillips, Maggie Phillips & Mollie Matthews, my nephews and nieces respectively and their heirs. I mean to say that my son, Swep Sidnor Phillips, is to have all my land or real estate after the death of his mother death—she holding Dower & Homestead during life only,—my little son's guardian taking charge of all my real estate for the benefit of my little son not set apart for Dower & Homestead. My son is to have all my real estate, subject to the life estate of his mother in Dower and Homestead whatever amt. that may be.

"4th. I want the lot between me & R. S. Phillips Jr. (or that part left after the line is made straight between us,) reserved for my little son, Swep Sidnor Phillips. I dont want it cleared or cultivated, but to remain as it is till he is grown. I do not want it to be a part or parcel of the Dower or Homestead. But my wife Lillie D. Phillips is to have the right of way through said lot to the Red Gate on Public Road as long as she lives.

"5th. I want my wife, Lillie D. Phillips to have all the wood she needs for fuel, fencing and repairing. But I do not want the timber cut down or sold; or wantonly or unnecessarily destroyed. It want it saved for my little son Swep Sidnor.

"6th. I repeat, I want my executor, to see that woods lot between me & R. S. Phillips Jr. or that part of it, I may own at my death, is not cleared or cultivated, but kept as it is for my son, Swep Sidnor till he is of age.

"7th. I want my son, Swep, Sidnor to have his support out of my place till he is of age, without charge for board.

"He must pay no board while at home before he is of age. I want Sidnor's guardian & my executor too, to see to this; and I hereby name Mack Fuqua as guardian of my little son Swep Sidnor earnestly beg the Court to respect my wishes in this matter.

"8th. I want ¼ acre of land, with the present graves as near the center as possible set apart & reserved as a graveyard.

"9th. I hereby appoint R. S. Phillips, Jr. executor of this my last will; and I want my extr to see it that its provisions are faithfully and fully carried out.

"In testimony of which, I have here affixed my signature and seal this September 8th, 1897.

"R. S. Phillips."

The testator died in July, 1914, and the will was duly admitted to probate in the county court of Davidson County on July 19, 1914.

He was survived by his wife, Lillie Phillips, now Lillie Phillips McClendon, and his son, Swep Sidnor Phillips, who was married, and who died in March, 1935, without leaving a child or children surviving.

On July 20, 1935, Bennett Phillips, Maggie Phillips Holt, and Mollie Phillips Matthews, the nephew and nieces of the testator, and the parties named in the executory devise in the third clause of the will, filed a bill in Part II of the Chancery Court of Davidson County,

making Lillie Phillips McClendon and Emma Phillips, widow of Swep Sidnor Phillips, parties defendant.

The bill prayed that the will of R. S. Phillips, Sr., be construed, and that as Swep Sidnor Phillips died in March, 1935, without leaving a child or children surviving, the complainants be declared to be the owners of a two hundred and fifty acre tract of land in Davidson County, devised to Swep Sidnor Phillips, and if he should die without an heir or heirs born to him in lawful wedlock, to the complainants, subject to the dower and homestead rights of Lillie Phillips McClendon.

The defendants demurred to the bill, and from his decree overruling the demurrer, the chancellor permitted an appeal to this court, and here, in an opinion by Mr. Justice McKinney, filed January 30, 1937,[1] it was held that under a proper construction of the will, on the death of Swep Sidnor Phillips, without leaving a child or children surviving, the executory devise took effect, and that Bennett Phillips, Maggie Phillips Holt, and Mollie Phillips Matthews were entitled to possession of the property.

In an opinion filed on February 27, 1937, Mr. Justice McKinney denied a petition to rehear, and the cause was remanded to the court below for the execution of the decree,[1] and the decree of this court was made the decree of that court on April 25, 1937, and proceedings taken to appoint commissioners to set apart the homestead and dower of Lillie Phillips McClendon.

On October 12, 1937, the complainants, Eckhardt and others, filed the present bill in Part I of the Chancery Court of Davidson County against Bennett Phillips, Maggie Phillips Holt, and Joe, William Leonard, Dewitt,

---

[1] No opinion for publication.

and B. J. Matthews, and Louise Ragsdale, the last five named being the children of Mollie Phillips Matthews, deceased, and many other defendants.

After stating that the complainants and some of the defendants were not parties to the former litigation, and referring to the provisions of the will of R. S. Phillips, Sr., his death, the probate of the will, and the death of Swep Sidnor Phillips in March 1935, without leaving a child or children surviving, the bill in substance alleged that Swep Sidnor Phillips executed two deeds in 1925, and a third deed in 1927, to the complainants conveying parts of the two hundred and fifty acre tract, devised to him by the third clause of the will of R. S. Phillips, Sr., that the complainants, relying on opinions of examiners of titles, were of the opinion that they acquired fee simple titles under the deeds as did various subpurchasers from them; that complainants and the subpurchasers had made various improvements on parts of the land so deeded, and that several deeds of trust had been executed by them to secure loans, the proceeds of which had been used to make such improvements, and that they had paid taxes assessed against the land from the time they went into possession.

The bill prayed that the will of R. S. Phillips, Sr., be construed and that the court decree that Swep Sidnor Phillips, having survived his father, the testator, was vested with a fee simple title which passed to complainants and some of the defendants under the deeds executed by him in 1925 and 1927, or if mistaken in this that they have a lien on the land so conveyed for the value of the improvements and taxes.

The answer of defendants, who were the complainants in the former litigation, relied on the opinions delivered by Mr. Justice McKINNEY on the former appeal, and

while it was conceded that the former decree was not *res adjudicata,* it was insisted that the opinions referred to properly construed the will of R. S. Phillips, Sr., and that the chancellor should follow them in the present case.

With the opinions delivered on the former appeal before him, the chancellor sustained the bill and granted the primary relief prayed for the reasons stated in section 11 of the decree, which is as follows:

"That the Court is of opinion from the record in this cause, including the stipulation of the parties, that a different rule is applicable in determination of the rights and interests of the parties from that applied in the former case of *Bennett Phillips et al.* v. *Lillie Phillips McClendon et al.,* decided by the Supreme Court of Tennessee at its December Term, 1936, in a written opinion marked 'Exhibit E' to the original bill in this cause, and in which a petition to rehear was denied February 27, 1937, in another written opinion made 'Exhibit F' to said original bill, it being the opinon of the Court that in said former cause a rule of construction of wills was applicable as all of the parties before the Court in that cause were parties beneficiary under the will but that in this cause the parties complainant and some of the parties defendant are purchasers for value of their respective properties in reliance upon the record title to said property, including the will of said R. S. Phillips, Sr., deceased, and that as to them the well established construction of said will as a rule of property is applicable and that the controverted words in said will were properly construed by the title examiners and said purchasers as meaning a death within the lifetime of the testator, and that by reason of this fact, said purchasers took a

good title to said property in fee simple under the respective deeds to them.''

As the cause was heard in the court below 'on the bill, answers, and a stipulation, the defendants, Bennett Phillips, Maggie Phillips Holt, and the five children of Mollie Phillips Matthews have appealed directly to this court.

While counsel for the appellees offer nothing in support of the claimed distinction on which the decree is based, and rely on the same authorities which were considered and discussed on the former appeal, the question will be determined as if presented for the first time.

■ As has been held time and again, the cardinal rule of interpretation is to ascertain the intention of the testator from a consideration of the entire will, and as convenient aids to attain this end, auxiliary and subsidiary rules of construction have been created, for the most part by courts, but being subordinate to the cardinal rule, or the rule of intent, every rule of construction must necessarily contain the saving clause, ''unless a contrary intention appear from the will.''

■ Three of such rules, relevant here, are:

(1) If there is an immediate gift to A, and a gift over in case of his death, or any similar expression implying the death to be a contingent event, the gift over will take effect only in the event of A.'s death before the testator. Theobald on Wills (8 Ed., 1927), 742; 2 Jarman on Wills (Bigelow's Ed., 1893), chs. 48, 690 *et seq.*; 2 Page on Wills (2 Ed., 1926), section 1139.

■ ■ (2) If there is an immediate gift to A and if he dies leaving issue, or without issue, over, the gift over will take effect only in the event of A.'s death before the testator. Such, at least, is the settled rule of construction in Tennessee (*Vaughn* v. *Cator* (1886), 85 Tenn., 302, 2 S. W., 262; *Meacham* v. *Graham* (1897), 98

Tenn., 190, 39 S. W., 12; *Katzenberger* v. *Weaver* (1903), 110 Tenn., 620, 75 S. W., 937; *Frank* v. *Frank* (1908), 120 Tenn., 569, 111 S. W., 1119; *Scruggs* v. *Mayberry* (1916), 135 Tenn., 586, 188 S. W., 207) which finds support in 2 Page on Wills (2 Ed., 1926), section 1140, but admittedly is opposed to the long established English rule. Theobald on Wills (8 Ed., 1927), 745; 2 Jarman on Wills (Bigelow's Ed., 1893), chs. 49, 699 *et seq.*

It must be remembered, however, that this is merely a rule of construction which will yield to the intention of the testator, if the context of the will so requires, and that it is not a rule of property, as is the rule against perpetuities, which operates unflinchingly and independently of the intention of the testator.

This is made clear from *Hoggatt* v. *Clopton,* 142 Tenn., 184, 185, 193, 217 S. W., 657, 659, where it is stated:

"From these authorities, and from many others that might be cited, it is apparent that the construction placed upon the expressions used in *Vaughn* v. *Cator, Meacham* v. *Graham, Katzenberger* v. *Weaver, Frank* v. *Frank,* and *Scruggs* v. *Mayberry,* would in each case have yielded to any clear expression of the testator indicative of his purpose to make the death of the first taker mean a death at any time, and it was because no such clear intention was to be found in any of those wills that the rule in question was applied."

■ (3) If, after a particular estate to arise and vest in possession in the future, there is a gift to A, with a gift over if he dies simpliciter, or dies with or without leaving issue, the gift over will take effect on the death of A before or after the termination of the particular estate, accordingly as the intention of the testator may indicate. Theobald on Wills (8 Ed., 1927), 744, 746; 2 Jarman on Wills (Bigelow's Ed., 1893), 694, 725; 2 Page on Wills,

sec. 1139, page 1902, section 1142; *Meek* v. *Trotter* (1915), 133 Tenn., 145, 180 S. W., 176; *Hoggatt* v. *Clopton* (1919), 142 Tenn., 184, 217 S. W. 657; *Cook* v. *Collier* (Tenn. Ch. App., 1901), 62 S. W., 658, 660, orally affirmed by the Supreme Court; *Truett* v. *Cook* (1915), 5 Tenn. Civ. App. (5 Higgins), 456, *certiorari* denied; *Carr* v. *Carr* (1915), 8 Tenn. Civ. App. (8 Higgins), 406.

Jarman states the rule thus: ". . . but where the two concurrent or alternative gifts are preceded by a life or other partial interest, or the enjoyment under them is otherwise postponed, the way is open to a third construction, namely, that of applying the words in question to the event of death occurring before the period of possession or distribution, so that the original legatee, surviving that period, would become absolutely entitled. It is settled, however, that in this case, as well as where the original gift is immediate, the substituted gift will *prima facie* take effect whenever the death under the circumstances described occurs." 2 Jarman on Wills (Bigelow's Ed. 1893), 725.

It is immaterial whether the particular estate is created by the testator or by law, or whether it embraces the whole or a part of the legacy or devise, to the first remainderman, as it is the object of the rule to effectuate the intention that the first remainder is not to vest in possession wholly or partially until the termination of the prior estate, which is to come into existence after the death of the testator.

Solely to avoid future confusion, it may be added that rules of construction do not vary with the character of parties litigant, nor do they permit examiners of titles to isolate such words as "if he die with or without issue," or words of like legal import, and to attribute to

them the unerring significance of the death of the first legatee or devisee before the testator.

With these rules in mind, and putting out of view facts dehors the will, it appears:

■ (1) That Swep Sidnor Phillips was about five months old when the will was executed in 1897; (2) that after a life estate, consisting of dower and homestead, had been set apart to the testator's widow, his son was to come into possession of the entire tract of land after the death of his mother, and that the testator appointed a guardian, Mack Fuqua, to take charge of the property for the benefit of his son during his minority; (3) that the will contains a direction that the boundary of a lot between the testator's property and the property of R. S. Phillips Jr., should be rectified, and the testator's part should not be cleared or cultivated, but reserved for his son, Swep Sidnor Phillips, until he attained the age of twenty-one years, that no part of the dower or homestead estate should be set apart out of this particular part of the premises, and that Swep Sidnor Phillips should have support out of the place until he became twenty-one years of age, and should not be required to pay any board, before he attained that age.

These facts, collectively considered, unmistakably indicate events which necessarily had to happen after the death of the testator, and render inescapable the conclusion that it was his clear intention that the limitation over should take effect on the death of his son, Swep Sidnor Phillips, without leaving a child or children surviving, whenever it might occur.

In *Katzenberger* v. *Weaver*, 110 Tenn., 620, 632, 75 S. W., 937, 940, it was said: "*Alston* v. *Davis*, 39 Tenn. (2 Head), [266], 268, could in no event apply. The clause of the will there referred to contains directions to the

executors, and hence, of necessity, referred to a date after the testator's death, when the executors would be in the discharge of their duties."

The appointment of a guardian to manage and control the property during the minority of the testator's son necessarily refers to a condition of things coming into existence after the death of the testator, and the statement in the will that all of the land was to come into the possession of the son on the termination of the life estate of his mother, under the rule laid down in *Hoggatt* v. *Clopton*, 142 Tenn., 184, 217 S. W., 657, clearly shows that the testator had in mind a future event which could only happen after his death.

The cases cited under rule 3 were published in the reports years before the examiners of titles gave opinions as to the estate acquired by Swep Sidnor Phillips under his father's will, and before Eckhardt and others, relying on such opinions, purchased parts of the land in controversy from him in 1925 and 1927, and had the rule clearly stated in these cases, as well as the qualification of the *prima facie* rule stated in *Vaughn* v. *Cator*, *Meacham* v. *Graham*, *Katzenberger* v. *Weaver*, *Frank* v. *Frank*, and *Scruggs* v. *Mayberry*, been in the minds of the title examiners, it is difficult to see how they could have concluded that Swep Sidnor Phillips took a fee simple absolute title in the property from and after his father's death, not subject to be divested if he should die without leaving a child or children surviving.

As the executory devise was valid and took effect on the death of Swep Sidnor Phillips in March, 1935, without leaving a child or children surviving, the title of the parties named in the executory devise, and their right to the possession of the land cannot be defeated by the opinions of title examiners, however honestly they may

have acted in giving advice on which others purchased parts of the land for a valuable consideration.

It results that the decree of the court below is reversed, and that Bennett Phillips, Maggie Phillips Holt, and the five named children of Mollie Phillips Matthews, deceased, are the owners in fee of the two hundred and fifty acre tract devised by the third item of the will of R. S. Phillips, Sr., and that they are entitled to its immediate possession.

The prayer for alternative relief is granted, and the cause is remanded to the court below to the end that:

(1) Commissioners may be appointed to set apart the dower and homestead of Lillie Phillips McClendon, not, however, to include any part of the land embraced in the deeds executed by Swep Sidnor Phillips in which she joined for the purpose of releasing her dower and homestead.

(2) The purchasers and subpurchasers be allowed a lien on the lands embraced in the deeds of Swep Sidnor Phillips for the value of any improvements, such value to be limited to the amount the improvements may have permanently enhanced the value of the land when possession is surrendered to the appellants. Sales, if necessary to enforce the lien, will be made under such terms and conditions as the chancellor may prescribe.

(3) The purchasers and subpurchasers shall have a further lien on the property acquired by them on which they may have paid taxes during the time they have been in possession.

(4) The purchasers, and subpurchasers, shall account to the appellants for any rents or profits received by them from the time they went into possession until possession is actually surrendered to the appellants.

The appellee will pay the costs of the appeal.